FUGGI LAW FIRM, P.C.
ROBERT R. FUGGI, JR., ESQ.
ATTORNEY ID: 037581992
47 MAIN STREET
P.O. BOX 1808
TOMS RIVER NJ 08753
T: 732-240-9095
F: 732-240-9072
ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| K.S.<br><br>Plaintiff,<br><br>v.<br><br>Stockton University, Zachary Madle, Pi Kappa Phi, John Does (1-20)(Fictitious Individuals); A-Z OWNER CORPORATIONS (1-20)(Fictitious Corporations)<br><br>Defendant(s). | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action<br><br>Case No.:<br>_____<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL; DESIGNATION OF TRIAL COUNSEL; PLAINTIFF'S DEMAND FOR DAMAGES; DEMAND FOR ANSWERS TO INTERROGATORIES; AND NOTICE TO PRODUCE |

Plaintiff, K.S. by and through her attorneys, the Fuggi Law Firm, hereby files the following Complaint against Defendants as captioned above.

### PARTIES

1. Plaintiff K.S. is a female who at the time of the events complained of herein was a first year student at Stockton University.

2. Plaintiff K.S. was eighteen (18) years old at the time of all events material to this complaint.

3. At all material times Plaintiff was living at Stockton University while maintaining a residency at 31 Amendola Drive, Netcong, N.J. 07857.

4. K.S. at the time of the incident was majoring in Psychology and Elementary Education at Stockton University with the lifelong dream of one day becoming a teacher.

5. Plaintiff K.S. also was pursuing musical studies.

6. Another significant reason K.S. chose Stockton University to further her education was that Stockton University advertised that the University maintained a very safe campus atmosphere.

7. At the time of events complained of herein the Plaintiff was an on campus resident of Stockton University living in Freshman Dorm L100.

8. While adjusting to college life, K.S. entered into her fall semester with a focused and determined attitude until the night of the sexual assault.

9. The Defendant Stockton University is located in Galloway Township in Atlantic County, New Jersey, and is a public undergraduate and graduate university of the arts, sciences and professional studies of the New Jersey state system of higher education.

10. At all material times, Defendant Zachary Madle was an alumni of Stockton University Class of 2015 and member of the fraternity, Pi Kappa Phi at Stockton University.

11. Defendant Pi Kappa Phi's fraternity house is located at 600 W. White Horse Pike, Egg Harbor City, New Jersey 08215.

2

12. Stockton University had the knowledge and understanding this off-campus fraternity of Pi Kappa Phi existed bearing their own emblem and colors.

13. Defendant Zachary Madle who graduated from Stockton University in 2015, was and is a member of the Pi Kappa Phi fraternity that often took part in activities related to Stockton University's campus and student body.

14. Defendant Zachary Madle was/is a bartender at the Flow House in Wildwood, New Jersey where he gained experience in preparing and dispensing alcoholic beverages to patrons.

15. On at least one occasion the Defendant, Zachary Madle used either/or a date rap drug/drink concoction spiking in which he placed into the plaintiff's drink without her knowledge, to incapacitate her for the purpose to engage in unlawful sexual contact with the plaintiff without her consent.

16. At all material times, the Title IX Coordinator of Stockton University was an agent and/or employee of Defendant Stockton University, acting or failing to act within the scope, course, and authority of her employment and her employer.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

4. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## III. APPLICABLE LAW AND POLICY

6. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

7. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106.

8. 34 C.F.R. § 106.8(b) provides: . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

9. In Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

10. In Davis v. Monroe County Board. of Education, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in Gebser to cases where the harasser is a student, rather than a teacher.

11. Davis held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-

student harassment where the funding recipient is a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. Davis, 526 U.S. at 1669-76.

12. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

## STATEMENT OF FACTS

13. The Plaintiff, K.S. first met the Defendant Zachary Madle, on the date of October, 20 2017 and later that night at a Fraternity Party at the Pi Kappa Phi house, which is located in the surrounding area of Stockton's campus.

14. At the Fraternity Party, the Plaintiff was drinking beer and "Jungle Juice", a mixture of Everclear, Vodka, or other available liquors, mixed with Fruit Punch that was provided by the fraternity house which was dispensed from a Gatorade cooler. The cooler was not transparent, and party goers could not visibly see the contents of the cooler. The "Jungle Juice" may have contained other substances.

15. The fraternity house at the Pi Kappa Phi provided Stockton students attending their parties to drink the alcohol provided by Pi Kappa Phi members.

16. Mostly every month Pi Kappa Phi would hold a house party where many Stockton students would attend. Regardless of whether or not they were underage, they were served alcohol by the Pi Kappa Phi members of the fraternity.

17. At these parties, only female students were invited, and they were known amongst the fraternity brothers as "pussy parties."

18. The party of October 20, 2017 was invitation only; and as was usual, only girls were invited to attend the party beside the fraternity brothers.

19. Plaintiff arrived at the party at approximately 10:30 p.m. with her friend J.K.

20. While at the party, the Plaintiff K.S. and J.K. were with Defendant Zachary Madle in the Pi Kappa Phi fraternity house.

21. Plaintiff spent the early parts of the party dancing, talking, and kissing with Defendant Madle and J.K.

22. At some point in the evening, Defendant Madle pulled K.S. and J.K into one of the bedrooms of the fraternity house, adjacent to the dance floor area, which was being used by a current Stockton student and current Pi Kappa Phi brother, C.A.

23. Plaintiff K.S., J.K. and Defendant Madle began talking which then led to kissing on the bed.

24. Then without consent, Defendant Madle began attempting to have sex with the girls, specifically K.S. While K.S. was intoxicated, Defendant Madle grabbed K.S. by the waist and threw her on the bed. He then began to take off her clothes, first her shirt, then her pants and underwear.

25. Defendant Madle then tried to have sex with plaintiff without the use of a condom. He told K.S. "I'm clean, it doesn't matter if you're clean." Madle then attempted to force his penis into K.S. without a condom and without consent.

26. Plaintiff K.S. had to push Madle off of her to stop him from having unprotected sex with her. Eventually, Plaintiff was able to get Defendant Madle to reluctantly wear a condom although she was intoxicated.

27. However, once the sexual relations began, Defendant Madle began to become physically abusive and grow more and more physically aggressive. He began to hit, bite, and choke Plaintiff K.S. without her consent. She told Defendant Madle to "Stop" but he did not.

28. When K.S. told Madle to stop, he replied "We gotta cum good." He then proceeded to rape her.

29. Plaintiff was so upset and disoriented by the violence by Defendant Madle, she could not tell if J.K. was injured. K.S. suffered physical injury from the violent assault.

30. Eventually she would learn that J.K. ran out of the room while K.S. was being physically and sexually assaulted by Defendant Madle.

31. During the sexual assault Plaintiff K.S. blacked out. The last thing she remembers is being violently chocked, hit, and painfully fingered vaginally by Defendant Madle.

32. Eventually, once Madle was done and K.S. regained her faculties, she ran out of the room. She was in such a hurry that she forgot one of her shirts, a black laced top.

33. K.S. had never experienced nor would ever consent to the violent sexual attack by Defendant Madle.

34. Plaintiff remembers feeling shocked, upset, violated, and hurt from this attack.

35. Plaintiff K.S. then went outside to the front of the house where her friend J.K. was waiting for her. They both were visibly shaken from the encounter with Defendant Madle.

36. When plaintiff finally left the party, it was between approximately 1:30 a.m. and 2:00 a.m. on October 21, 2017.

37. After returning to dorm, Plaintiff K.S. eventually became oriented enough to take photographs of the markings left as a result of the assault of Defendant Madle.

38. The next day, Defendant Madle sent K.S. some harassing texts. He texted K.S. a meme which stated: **"Bitches love sex until they meet that nigga [sic] who don't nut fast."** (This means he

wouldn't let K.S. go until he ejaculated). The meme also had pictures of three popular emojis: a relieved face, followed by an eggplant, followed by three drops of water.

39. This sequence of three emoji's is commonly used to signify the release of bodily fluids and semen from a male penis.

40. Days later Plaintiff K.S. responded with "I left my shirt can you find it for me?" Madle's reply was "I'm in Key West. I can't look for it right now."

41. On the night of November 9, 2017, Plaintiff sent a text message to Madle: "Are you going to be at the house tomorrow night?" In reference to another Pi Kappa Phi party. Defendant Madle replied "I'll be there with a handle of Jack [Daniels Whiskey]." K.S. replied "We can find my shirt."

42. On the night of November 9, 2017, into the early morning hours of November 10, 2017 K.S. attended another party at the Pi Kappa Phi fraternity house, this time with her friend J.D.

43. When Plaintiff K.S. arrived at the house, she saw Madle, but was able to avoid him.

44. Plaintiff K.S. observed that Madle spent most of the time at the party drinking, but she was able to stay away from him throughout the night.

45. At approximately 1:30 a.m. on November 10, 2017, Defendant Madle texted K.S. "Where you at." She did not respond and ignored him.

46. While K.S. was hanging out outside the house with J.D., Madle approached her and said "I was looking for you."

47. Plaintiff K.S. responded to this by walking away.

48. Eventually, Madle turned his focus and attention to J.D., which made K.S. nervous because, she was clearly heavily intoxiacted due to drinking the fraternity's "jungle juice". Madle then began touching J.D. and trying to undue her bra straps.

49. Shortly thereafter, K.S. saw Madle leading J.D. into the same fraternity house and bedroom in which she had been sexually assaulted, physically abused, and raped.

50. Plaintiff K.S. decided that she could not allow J.D. to suffer the same fate that she did with Madle, so she went into the Pi Kappa Phi house to prevent J.D. from being raped because K.S. believed J.D. did not know what was about to happen because she was so intoxicated.

51. When K.S. went into the bedroom, Madle was on the bed with J.D. on his lap. J.D. had a terrified look on her face.

52. Plaintiff K.S. said to Madle "She's drunk, leave her alone." But he began to kiss J.D. Plaintiff K.S. stated again "Look at her face! She's too drunk, leave her alone!"

53. Madle's response was to get up and push K.S. violently against the wall. "Stop. Relax." he told her. He then began kissing and touching K.S.'s breasts and butt. K.S. yelled "Stop!" to him. He then returned to the bed and pulled J.D. back onto his lap.

54. At this point K.S. was upset and attempted to call their friend who was getting them an Uber, to return to their dorm room on the nearby Stockton campus.

55. Frustrated that the girls wanted to leave, Madle then grabbed both girls' phones and threw them against the wall and wouldn't let them call for help or leave the bedroom.

56. But K.S. in a totally dark room, went back over the bed and tried to pull J.D. off of Madle.

57. This made Madle extremely angry. He then forcibly grabbed K.S. on the bed and got on top of her and said to her "If I can't have her, I'll have you." K.S. was very fearful because Madle is very big and strong, and she feared he would hurt her again.

58. Defendant Madle then pulled K.S. into the bathroom against her will.

59. Once in the bathroom, Madle locked the door and began to pull her pants down and rape Plaintiff K.S.

60. K.S. tried to tell Madle that she was on her period, but Madle forced her to remove her tampon.

61. Madle then pushed K.S.'s head against the mirror and began to forcibly have sex with K.S. from behind without her consent. Defendant also hurt K.S.'s head from slamming it against the mirror several times.

62. Plaintiff was visibly shaken from this attack and was fearful because Madle was not wearing a condom during the rape.

Plaintiff did not use birth control and was fearful this attack could have led to her becoming pregnant.

63. Plaintiff K.S. believes the attack and sexual assault lasted approximately ten minutes. She cried throughout the entirety of the rape at the hands of Madle, and told him "No."

64. When Madle was finished he said to K.S. "This is done."

65. When K.S. left the bathroom J.D. was still on the bed crying.

66. K.S. and J.D. left the party together immediately thereafter to get the Uber to return to their dorm.

67. Plaintiff K.S. reported the rape to her friends immediately after it happened while at the F200 dorm.

68. The week after the assault, Pi Kappa Phi member C.A., whose room was used by Madle to commit the rapes, later attempted to apologize to K.S. for what happened. He stated that Madle would be banned from future parties, because of his out of control conduct.

69. Plaintiff K.S. has reported the sexual assault and rape to the proper authorities.

70. Plaintiff K.S has been in regular therapy since these incident and she has suffered physical, physiological, and emotional trauma as a result of the rape and sexual of Defendant Madle.

**COUNT ONE**
**VIOLATION OF TITLE IX AS TO DEFENDANT STOCKTON UNIVERSITY (20**
**U.S.C. § 1681, et seq.) (Retaliation by Withholding Protections**
**Otherwise Conferred by Title IX)**

71. Stockton University had reassured students that they would
    protect and investigate any and all sexual attacks regardless of
    whether the matter was referred to law enforcement.

72. Once a victim of sexual abuse insisted upon involving law
    enforcement for a criminal investigation, the University
    retaliated against victims by declining to investigate the
    matter, report all instances of sexual abuse, or to otherwise
    comply with their responsibilities as mandated by Title IX.

73. Stockton University knew of the conduct of Pi Kappa Phi, which
    included their proclivity to endorse underage drinking and
    sexual assaults of Stockton's student body.

74. Stockton University has been on notice of past incidents
    involving rape and sexual assault, underage drinking, and
    fighting, involving Stockton students and Pi Kappa Phi members
    and declined to intervene to prohibit the conduct and as such,
    was complicit.

**COUNT TWO**
**VIOLATION OF TITLE IX AS TO STOCKON UNIVERSITY (20 U.S.C. §**
**1681, et seq.) (The School's Deliberate Indifference to Alleged**
**Sexual Harassment)**

75. The sex-based harassment articulated in the Plaintiffs' General
    Allegations was so severe, pervasive, and objectively offensive

14

that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

76. The Defendant University created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because a) Plaintiff was a member of a protected class; b) she was subjected to sexual harassment in the form of a sexual assault by a former student; c) she was subjected to harassment based on her sex; and d) she was subjected to a hostile educational environment created by the University's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

77. Defendant Stockton University and its officials had actual and constructive knowledge of the sexual assault and the resulting harassment of Plaintiff created by its failure to investigate and discipline Plaintiff's attacker in a timely manner and consistent with its own policy and federal and state law.

78. The Defendant Stockton University's failure to promptly and appropriately respond to the alleged sexual harassment, resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

79. Defendant   Stockton   University   failed   to   take   immediate,
    effective remedial steps to resolve the complaints of sexual
    harassment and instead acted with deliberate indifference toward
    Plaintiff.

80. Defendant   Stockton   University   persisted   in   its   actions   and
    inaction even after it had actual knowledge of the harm suffered
    by Plaintiff.

81. Defendant Stockton University engaged in a pattern and practice
    of behavior designed to discourage and dissuade students and
    parents of students who had been sexually assaulted from seeking
    prosecution   and   protection   and   from   seeking   to   have   sexual
    assaults from being fully investigated and fully reported.

82. This policy and/or practice constituted disparate treatment of
    females and had a disparate impact on female students.

83. Plaintiff   has   suffered   emotional   distress   and   psychological
    damage,   and   her   character   and   standing   in   her   community   have
    suffered from the harassment fostered as a direct and proximate
    result of Defendant School District's deliberate indifference to
    her rights under Title IX.

### COUNT THREE
### 1983 VIOLATION AS TO DEFENDANTS STOCKON UNIVERSITY,
### (42 U.S.C. § 1983)

84. Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

85. Defendants Stockton Employees were all state actors acting under the color of state law.

86. Defendants each subjected Plaintiff to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate Zachary Madle and Pi Kappa Phi's misconduct; failing to appropriately discipline Zachary Madle and Pi Kappa Phi; failing to adequately train and supervise Stockton Employees; and manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiff by Zachary Madle and Pi Kappa Phi.

87. Stockton University has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against Stockton University students in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise School District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

88. On information and belief, the University has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other Stockton University students.

89. The University's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

90. Defendants Stockton University and Zachary Madle are or were at the time of events complained of within, policymakers for the purpose of implementing the University's unconstitutional policies or customs.

91. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under the Fourteenth Amendment.

## COUNT FOUR
### LIABILITY FOR FAILURE TO TRAIN, SUPERVISE, AND PROTECT STUDENTS FROM SEXUAL ASSAULT AS TO DEFENDANT STOCKTON UNIVERSITY
### (42 U.S.C. § 1983)

92. Defendant Stockton Employees, were "state actors" working for Stockton University, a federally funded school system.

93. Defendant Stockton Employees acted under "color of law" when refusing to respond to Plaintiff's sexual assault on school premises.

94. Defendant Stockton Employees failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

95. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

96. Defendant Stockton Employees should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

97. Defendant Stockton Employees each violated Plaintiff's right to equal access by:

   a. Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

   b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

   c. Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

   d. Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of

sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights;

e. Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

f. Failing to notify both parties of the outcome of the complaint.

98. Defendant Stockton University violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

99. These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

100. Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendant Stockton University's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and

her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

**COUNT FIVE**
**VIOLATION OF THE JEANNE CLERY DISCLOSURE OF CAMPUS SECURITY POLICY AND CAMPUS CRIME STATISTICS ACT (CLERY ACT)**

101. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

102. The Clery Act, passed in November 1990, requires that higher education institutions whose students receive federal financial aid collect and report crime data to the U.S. Department of Education.

103. A 1992 amendment to the Clery Act established the Campus Sexual Assault Victims' Bill of Rights, requiring schools to provide

certain basic rights to survivors of sexual assaults on campus, including:

104. Giving the alleged victim and the alleged assailant equal opportunity to have others present in disciplinary proceedings and equal notification of the outcome of such proceedings;

105. Notifying alleged victims of the availability of counseling services, and of their right to pursue remedies through local police;

106. Notifying alleged victims that they have the option of changing classes and dormitory assignments in order to avoid their alleged assailants;

107. The Clery Act requires colleges and universities to do the following with regards to sexual assault reports: 1) Publish an Annual Security Report; 2) Disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities; 3) Issue timely warnings about Clery Act crimes which pose a serious or ongoing threat to students and employees; and 4) Devise an emergency response, notification, and testing policy.

108. Defendant Stockton University failed to disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities;

109. Defendant Stockton University failed to issue timely warnings about crimes involving Pi Kappa Phi, which posed a serious and ongoing threat to students, that Stockton University allowed to occur.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT SIX
### SEXUAL ASSAULT/SEXUAL ABUSE

110. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

111. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on or about Stockton University's campus and at Pi Kappa Phi's fraternity house and a member of Pi Kappa Phi at Stockton University.

112. On at least one occasions the Defendant, Zachary Madle used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

113. All Defendants acted with the purposeful, knowing, reckless, negligent intent to cause harm and/or offensive contact to the Plaintiff K.S. and thereby put her in imminent apprehension and fear for her well-being.

114. All Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

115. Plaintiff did not and could not consent to the acts, and any purported consent was secured through fraud, deception and undue influence, coercion and duress thereby rendering it void.

116. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

117. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

118. All defendants are responsible for sexual assault of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages,

loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT SEVEN
### AGGRAVATED ASSAULT

119. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

120. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

121. On at least one occasions the Defendant, Zachary Madle used a date rape drug or alcohol spiking which he placed into the

plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

122. Defendants attempted to cause serious bodily injury to plaintiff purposely, knowingly, or under circumstances manifesting an extreme indifference to the value of human life.

123. Defendants attempted to cause significant bodily injury to plaintiff knowingly, under circumstances manifesting extreme indifference to the value of human life, or recklessly to cause such significant bodily injury.

124. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

125. All defendants are responsible for aggravated assault of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the aggravated assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT EIGHT
### SEXUAL BATTERY

126.    Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

127.    At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

128.    On at least one occasions the Defendant, Zachary Madle used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

129. During the relevant times alleged herein Defendant Zachary Madle purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff, K.S. by an act of sexual contact or sexual penetration for sexual gratification by duress and force.

130. During the relevant times alleged herein Defendant Zachary Madle purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by sexual contact, by an intentional touching, either directly or through clothing, of the plaintiff K.S.'s intimate parts for the purpose of sexually arousing or sexually gratifying the Defendant Zachary Madle, by duress and force.

131. During the relevant times alleged herein Defendant Zachary Madle purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by an act of sexual contact or sexual penetration between the plaintiff and Defendant Zachary Madle, for sexual gratification by duress and force.

132. During the relevant times alleged herein Defendant Zachary Madle purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by sexually contacting, battering, harassing, touching, penetrating plaintiff, K.S. for sexual gratification by duress and force.

133. During the relevant times alleged herein, Defendant Zachary Madle grabbed and groped the plaintiff for the purpose of sexually arousing or gratifying Defendant Zachary Madle.

134. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in

mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

135. All defendants are responsible for sexual battery of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by

eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT NINE
## CIVIL BATTERY

136. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

137. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

138. On at least one occasions the Defendant, Zachary Madle used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

139. Defendants caused actual harmful and offensive touching of Plaintiff with the intent to cause offensive touching of Plaintiff.

140. Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

141. Plaintiff did not consent and could not consent to the touching which was against her will and any failure to report the incidents was the result of overwhelming mental duress, undue influence and coercion.

142. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

143. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

144. All defendants are responsible for Civil Battery of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT TEN
### FALSE IMPRISONMENT

145. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

146. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on or about Stockton University's campus and at Pi Kappa Phi's fraternity house.

34

147. On at least one occasions the Defendant, Zachary Madle used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

148. At all times relevant hereto, while Defendant Zachary Madle perpetrated his sexual battery, sexual assault, battery and assault, of the plaintiff, the defendant knowingly restrained Plaintiff unlawfully, interfering substantially with her liberty then sexually assaulted her.

149. The circumstances under which defendant restrained the Plaintiff exposed her to risk of serious bodily injury.

150. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others

has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

151. All defendants are responsible for false imprisonment of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the false imprisonment of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT ELEVEN
### INVASION OF PRIVACY

152. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

153. Defendants intentionally intruded upon the plaintiff physically or otherwise, upon the solitude or seclusion of her private affairs or concerns, which was highly offensive to a reasonable person. Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982) (quoting Restatement (Second) of Torts, supra, § 652B).

154. Plaintiff possessed a reasonable expectation of privacy while attending school at Stockton University.

155. Defendant Stockton University failed to provide reasonable accommodations for the Plaintiff K.S. she was a resident on campus.

156. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks;

anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

157. All defendants are responsible for Plaintiff's invasion of privacy. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the invasion of the plaintiff's privacy.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to

prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

**COUNT TWELVE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

158. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

159. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

160. On at least one occasions the Defendant, Zachary Madle used a date rape drug or alcohol spiking which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

161. Defendant Zachary Madle by duress and intimidation, caused Plaintiff to engage in sexual contact with him, which included the humiliating acts set forth in previous counts of this

Complaint, including, but not limited to, all for the sexual gratification of defendant, Zachary Madle.

162. The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

163. Defendants acted either intentionally or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

164. The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

165. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in

40

mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

166. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through intentional infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and

mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT THIRTEEN
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

167. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

168. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

169. Defendant Zachary Madle by duress and intimidation, caused Plaintiff to engage in sexual contact with him, which included the humiliating acts set forth in previous counts of this Complaint, including, but not limited to, all for the sexual gratification of defendant, Zachary Madle.

170. The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

171. Defendants acted carelessly, negligently, or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff would

result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

172. The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

173. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

174. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted

carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT FOURTEEN
### NEGLIGENT HIRING

175. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

44

176. Defendant Stockton University entrusted Defendants Stockton Employees who hired Defendants Stockton Employees and Resident Assistants.

177. Defendant Stockton University, as an employer, at the time of hiring employees, Defendant Stockton Employees, had reason to believe, or could have determined by reasonable investigation, that the employees were dangerous and/or ill-equipped to handle perform their duties and hired them anyway, which proximately caused injury to K.S. DiCosala v. Kay, 91 N.J. 159, 173-74 (1982).

178. Defendant Stockton University as an employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the Pi Kappa Phi fraternity and did nothing.

179. Defendant Stockton University and Defendants Stockton Employees, as an employer could have reasonably foreseen that Pi Kappa Phi and Maddle a person with dangerous attributes created a risk of harm to other students at Stockton University whether on or off the premises.

180. Defendants Stockton Employees showed a risk of harm that was foreseeable and carelessly, negligently, and recklessly disregarded.

181. Defendant Stockton University and Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to

plaintiff by allowing Defendants Pi Kappa Phi and Madle to exist off campus when Stockton University had knowledge of Pi Kappa Phi's ongoing misconduct.

182. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and

her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT FIFTEEN
## NEGLIGENT SUPERVISION

183. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

184. Defendants Stockton University, Stockton University Employees, and Resident Assistants were hired and chosen by Defendant Stockton University to protect its student body.

185. Stockton University, Stockton Employees, and Stockton University Resident Assistants accepted the responsibility of protecting the student body from harm.

186. Stockton University, Stockton Employees, and Stockton University Resident Assistants, managers, training staff, and/or supervisors failed to properly monitor the defendant employers, Pi Kappa Phi, and Madle. Based on external factors and the entirety of the circumstances, a reasonable person would expect a higher level of supervision and protection.

187. Plaintiff sustained an injury, which was a direct result of the failure to supervise and protect the student body.

188. Defendants Stockton University and Defendant Stockton Employees in their roles failed to maintain and implement a practical sexual abuse/harassment policy, which is evidenced by the failures of Stockton employees and Stockton students to report sexual abuse.

189. Stockton Employees failed to reasonably supervise Pi Kappa Phi and other Greek life, which led to K.S.'s foreseeable injuries.

190. A reasonable supervisor could have seen this incident coming and prevented it from happening and/or would have reported the sexual abuse once gaining knowledge of it.

191. If there was proper supervision, plaintiff would not have been sexually assaulted by Defendant Zachary Madle. Rather, Defendant Zachary Madle was granted unfettered access to K.S. through the fraternity Pi Kappa Phi which allowed him to sexually abuse K.S.

192. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical

injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

193. Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by failing to supervise their employees the Defendants Zachary Madle/Stockton Employees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and

her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT SIXTEEN
## NEGLIGENT RETENTION

194. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

195. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on or about Stockton University's campus and at Pi Kappa Phi's fraternity house.

196. Defendant Stockton University, learned of Defendants Stockton Employees Defendant Zachary Madle's Pi Kappa Phi's dangerous propensities.

50

197. Defendant Stockton University, retained negligent Defendants
Stockton Employees after learning of their inability and failure
to protect student body.

198. Defendant Stockton University and Defendants Stockton Employees
did not take appropriate action to prevent harm to others, such
as the plaintiff K.S.

199. As a result, Stockton University and Defendant Stockton
Employees, facilitated Zachary Madle's and Pi Kappa Phi's
predatory behavior.

200. As a direct and proximate result of the conduct described herein
above, Plaintiff has and will continue to suffer physical
injury; severe emotional distress and anguish; diminished
enjoyment of life; difficulty and an inability to focus;
difficulty and an inability to perform work-related tasks;
anxiety; depression; humiliation; pain in mind and body; severe
embarrassment; is having and has had difficulty living a normal
life; has not and will not engage in normal activities; will
suffer from behavior patterns and will continue to do so in the
future; will in the future be caused to endure severe pain in
mind and body; has endured interference with and will continue
to endure interference with engaging in her full normal daily
activities. Plaintiff's self-esteem and ability to trust others
has been substantially impaired, needing to obtain help and
treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

201. Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining their employees after learning of Defendant Zachary Madle's dangerous propensities.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT SEVENTEEN
### VICARIOUS LIABILITY

202. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

203. At all times relevant, Stockton University, Stockton Employees, and Stockton University Resident Assistants, were present on or about Stockton University's campus and allowed the sexual assaults to occur.

204. Defendant Stockton University, Defendants Stockton Employees as an employer, hired Stockton Employees to perform services in the affairs of Stockton University and who with respect to the physical conduct in the performance of the services is subject to Stockton University, Defendants Stockton Employees control or right to control.

205. Defendant Stockton University, Defendants Stockton Employees exercised control over the details of the work, by which the distinct business all Defendants were engaged in, holding them vicariously liable for the Defendant Employees' failure to protect the student body.

206. Defendants Stockton University, Defendants Stockton Employees did not take appropriate action to prevent harm to others, such as the plaintiff, K.S.

207. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

208. Defendant Stockton University. acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining employees Defendant Stockton Employees is therefore vicariously liable for their actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT EIGHTEEN
### RESPONDEAT SUPERIOR

209. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

210. At all relevant times, all defendant employees of Stockton University, were acting for, upon, and in furtherance of the

business of their employer and within the scope of their employment.

211. As a result, Stockton University, Defendants Stockton Employees facilitated Zachary Madle's/ Pi Kappa Phi's predatory behavior.

212. Consequently, Stockton University is liable under the doctrine of respondeat superior for their tortious actions.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT NINETEEN
### RATIFICATION

213. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

214. Defendants Stockton Employees were agents, directors, and employees of Stockton University.

215. At the time of the acts stated in the Complaint, there was an actual or assumed agency relationship between Defendants Stockton Employees and Stockton University.

216. All acts or omissions alleged of were ratified by Stockton University. Stockton University had investigated or knew of the deviant acts of Zachary Madle and Pi Kappa Phi and Stockton University's, employees, managers, supervisors, executives, and directors were informed that Zachary Madle/ Pi Kappa Phi's was sexually abusing female students and refused to take any action to stop him.

217. Moreover, Stockton University's. managers, supervisors, executives, and directors hid this information

218. Despite knowledge of Zachary Madle's/ Pi Kappa Phi's sexual misconduct, no disciplinary action was taken to deter or prevent this type of misconduct that was known of occurring throughout the Stockton University campus.

219. As a result, Stockton University, Defendants Stockton Employees facilitated Zachary Madle's/ Pi Kappa Phi's predatory behavior.

220. Stockton University, is thus responsible for Zachary Madle's/ Pi Kappa Phi's acts of assault, battery, sexual abuse, false imprisonment, invasion of privacy, and intentional or negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

COUNT TWENTY
FAILURE TO WARN/MISREPRESENTATION

221. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

222. Defendant Stockton University, failed to do their due diligence, which would have revealed to Stockton students information about the dangers and sexual misconduct associated with such Defendants Zachary Madle/ Pi Kappa Phi.

223. Defendant Stockton University, failed to warn that Defendant Pi Kappa Phi was a threat to public safety.

224. Defendant Stockton University, failed to take even minimal efforts to determine whether Madle and Pi Kappa Phi was a threat to the student body.

225. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in

mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

226. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by Pi Kappa Phi to exit and maintain housing as a unregistered fraternity near the Stockton University campus.

227. Stockton University after learning of Pi Kappa Phi dangerous propensities and failing to warn the plaintiff, is therefore vicariously liable for Zachary Madle/ Pi Kappa Phi actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including

sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT TWENTY-ONE
## GROSS NEGLIGENCE

228. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

229. Defendant Stockton University owed a heightened duty to K.S. to exercise reasonable care in the planning and providing of proper accommodations for K.S. as a Freshman resident living on Stockton's campus.

230. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing Zachary Madle and Pi Kappa Phi to maintain housing in close proximity to Stockton University's campus.

231. Defendant Stockton University had a heightened duty of care to K.S. because of the inherent risk and prior history of Defendant Pi Kappa Phi that was already made known to Stockton University.

232. Defendant Stockton University breached their legal duty to K.S. and failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for her safety.

233. Defendants knew or should have known that their wanton or reckless conduct would result in a foreseeable injury to K.S.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT TWENTY-TWO
## PUNITIVE DAMAGES

234. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

235. The New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, punitive damages may be awarded to the plaintiff only if he or she proves, by clear and convincing evidence that the harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns Defendants, all, individually and jointly, acted with malice, fraud, wantonness, oppression, and willful misconduct, with the specific intent to cause harm.

236. The Defendants' conduct had a very serious likelihood that serious harm would arise.

237. The Defendants' had awareness, careless, negligent, or reckless disregard of the likelihood that such serious harm would arise from his conduct.

238. The harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns, alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

239. The aforementioned conduct of Defendants is so outrageous in character, and so extreme in degree to go beyond all possible

63

bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, thereby rising to the level of willful, wanton, knowing, and intentional misconduct under the Punitive Damages Act.

240. Defendant Stockton University had no proper implementation of a sexual abuse policy in place at the time of abuse.

241. Even if Stockton University did have a token policy in place, it is clear based on the events of the case that it was not enforced or taught properly and supported with adequate training causes which is equal to not having a policy at all.

242. The lack of a policy is evident by the reported incidents to Stockton police of Pi Kappa Phi, and other sexual assaults on and off campus.

243. As a direct and proximate result of the intentional, extreme and outrageous conduct of Defendants, plaintiff was caused to sustain serious, life threatening, permanent physical injuries.

244. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will

suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

245. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining Stockton Employees who had learned of the dangerous propensities associated with Pi Kappa Phi and failed to warn the plaintiff, and is therefore vicariously liable for Zachary Madle/ Pi Kappa Phi actions against the plaintiff.


### COUNT TWENTY-THREE
### FICTITIOUS PARTIES

246. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

247. JANE AND JOHN DOES (1-20)(Fictitious Individuals) and ABC CORPORATIONS (A-Z); are fictitious names for persons or entities

which have not yet been identified but whose identities will be supplemented when ascertained by the plaintiff.

248. Said defendants may have played a role in the harm suffered by plaintiff.

249. Plaintiffs hereby reserve their right to amend the Complaint as a result of pleading such fictitious parties.

250. John and Jane Does (1-20) and ABC Corporations (A-Z) are individuals who may have taken action or inaction that resulted in harm against the Plaintiff but as are yet unknown or not yet necessarily germane to the allegations alleged in the complaint.

251. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and

treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be determined at trial;

5. For liquidated damages;

6. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

7. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

8. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), New Jersey Revised Statutes § 10:5-27.1, and other laws; and

9. For such other and further relief as this Court deems just and proper.

FUGGI LAW FIRM, P.C.

_____
ROBERT R. FUGGI, JR., ESQ.

DATE: 7/13/2018

## JURY DEMAND

Plaintiff hereby demands a trial by a jury on all of the issues contained herein.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.


## DESIGNATION OF TRIAL COUNSEL

ROBERT R. FUGGI, JR., ESQ., is hereby designated as trial counsel in this matter.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.


## PLAINTIFF'S DEMAND FOR DAMAGES

Plaintiff hereby demands damages from Defendants in an amount to be determined at the time of trial.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or arbitration proceeding and plaintiff does not contemplate any other action or Arbitration proceeding.

I certify that the foregoing statements made by me are true and correct to the best of my knowledge and information. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.


## DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiff(s) hereby make(s) demand for fully responsive answers to New Jersey Court Rules Appendix II, Form C answers within sixty (60) days of the date of service of this Complaint.

In answering, please consider the events alleged in this Complaint as the accident or occurrence and to which such questions relate. Please give specific information in your answers and not merely references to medical, police or other records or reports.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

NOTICE TO PRODUCE

Pursuant to the Rules of Court, the undersigned requests that you produce the following documents and other items for inspection and copying at the offices of FUGGI LAW FIRM, P.C. 47 Main Street, Toms River, New Jersey 08753, within 30 days. You may comply with this request by mailing legible copies of the documents.

1. All written statements made and/or signed by any party Defendant or their agent, servant or employee, relative to reports made to any Defendant(s) their agent(s), servant(s) or employee(s) relative to any act or behavior of Defendants involving harassment, assault and intention infliction of emotional distress.

2. All written statements made and/or signed by the party serving this request or by any agent or employee of the party serving this request.

3. All written evidence of any oral statements made by the party serving this request or by any agent or employee of the party serving this request.

4. All charts, drawings, illustrations, diagrams, and other documents that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

5. All records pertaining to any tests, inspections and examinations performed with respect to any object, thing, or substance relevant to this action. This refers to tests and examinations performed by persons other than you, your attorneys, or anyone acting on your behalf.

6. All documents that you or your attorneys supplied to any experts who will be called as witnesses on your behalf at the trial of this action.

7. All videos and films that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

8. The written reports of all experts who you or your attorneys intend to call as witnesses on your behalf at the trial of this action.

9. Copies of any and all Complaints filed in this State or any other against any of the Defendants arising out of allegations of assault, general negligence, or intentional infliction of emotional distress.

10. All police reports relative to any action or behavior engaged in by Defendant or any Defendant, their agent servant or employee, from date of hiring to present.

11. All interrogatories, and Notices to Produce previously
    answered by you in this action. All depositions noticed by
    you or taken of you.

                        FUGGI LAW FIRM, P.C.


                        ROBERT R. FUGGI, JR. / ESQ.